# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# AT ASHLAND

CIVIL ACTION NO. _____

| | |
|---|---|
| HENSYN RESOURCES, LLC, | PLAINTIFF, |
| Vs. | |
| HORIZON MINING, LLC, | DEFENDANT, |

## PETITION FOR DECLARATION OF RIGHTS AND COMPLAINT FOR CONTRACTUAL DAMAGES

*COMES* NOW THE PLAINTIFF, HENSYN RESOURCES, LLC, by and through counsel, and for its cause of action states as follows:

### INTRODUCTION

1. The matter arises out of a bitcoin mining operation in Kentucky. Horizon Mining, LLC contracted with Hensyn Resources, LLC to provide certain services in order to launch its bitcoin mine. Hensyn performed the services required to launch the bitcoin mine. Horizon began making the required payments to Hensyn. Subsequently, Horizon unilaterally terminated the agreement on the grounds that it did not foresee that the utility rates would increase. Hensyn seeks a declaration of its rights under the Service Agreement and contractual damages.

### PARTIES

2. Plaintiff, Hensyn Resources, LLC ("Hensyn") is a Kentucky limited liability company located in Ashland, Kentucky and is authorized to do business in the Commonwealth of Kentucky.

3. Defendant Horizon Mining, LLC ("Horizon") is foreign limited liability company

1

organized under the laws of Texas, whose principal place of business is Pasadena, Texas, and is authorized to do business in the Commonwealth of Kentucky.

4. Service of process shall be made on the Kentucky Secretary of State who is deemed to be the statutory agent for Horizon Mining, LLC, pursuant to Kentucky's Long Arm Statute (KRS 454.210(3)(a)(3)). The Secretary of State shall within seven (7) days of receipt thereof in his office, mail a copy of the summons and complaint to Horizon Mining, LLC's manager/member Tom Mills, 3009 Pasadena Fwy Ste 140, Pasadena, Texas, 77503.

## VENUE/JURISDICTION

5. This Court has jurisdiction over this matter pursuant to 28 USC §1332(a) in that the parties are from different states and the amount in controversy exceeds $75,000.

6. An actual justiciable controversy exists between the parties within the meaning of the Declaratory Judgments Act, 28 U.S.C.A. §§ 2201 et seq., Plaintiff seeks a declaration of its rights in the contract between the parties, and order to enforce the contract, and damages from Defendant's breach thereof..

7. Venue is proper in the Eastern District of Kentucky at Ashland pursuant to 28 USC §1391(b)(2) because the events giving rise to the claim occurred in this district and the property involved is located in this district..

## FACTUAL BACKGROUND

8. That on or about July 18, 2021 Hensyn and Horizon entered into a "Services Agreement."

9. Under Section 1.1 of the Service Agreement, Hensyn was to provide the following four enumerated services to Horizon's bitcoin mining operations. (Exhibit 1.)

    a. Hensyn will locate and serve as a liaison between Horizon and a third¬ party land company tasked with locating available property lots, at prices acceptable to Horizon for lease or purchase, that: (i) are suitable and zoned for building bitcoin

mining sites; (ii) have electric substations with no less than 10-Megawatt available capacity; and (iii) have appropriate water and internet connections.

b. Hensyn will negotiate with electric power companies on Horizon's behalf to supply electricity toHorizon at aper KWH (Kilowatt Hour) price that isfair, appropriate, and acceptable to Horizon's.

c. Hensyn will communicate with and serve as a liaison between Horizon and local governmental entities and electric utilities to assist Horizon in obtaining the necessary approvals and permits to build and operate bitcoin mining sites.

d. Hensyn will assist in the launching of a bitcoin mining facility or facilities ("the Project(s)") by locating and serving as a liaison between Horizon and other businesses or professionals necessary to provide water system solutions, drill water wells, provide electrical engineering services, or other similar services.

10. Pursuant to 1.1 (a) of the Service Agreement, Hensyn located and served as a liaison between Horizon and a third- party land company tasked with locating available property lots, at prices acceptable to Horizon for lease or purchase, that: (i) was suitable and zoned for building bitcoin mining sites; (ii) had electric substations with no less than 10-Megawatt available capacity; and (iii) had appropriate water and internet connections.

11. Pursuant to 1.1 (b) of the Service Agreement, Hensyn negotiated with electric power companies on Horizon's behalf to supply electricity to Horizon at a per Kilowatt Hour price that was fair, appropriate, and acceptable to Horizon.

12. Pursuant to 1.1 (c) of the Service Agreement, Hensyn communicated with and served as a liaison between Horizon and local governmental entities and electric utilities to assist Horizon in obtaining the necessary approvals and permits to build and operate bitcoin mining sites.

13. Pursuant to 1.1 (d) of the Service Agreement, Hensyn assisted in the launching of a bitcoin mining facility or facilities by locating and serving as a liaison between Horizon and other businesses or professionals necessary to provide water system solutions, drill water wells,

provide electrical engineering services, or other similar services.

14. Hensyn performed all four of the required services in a manner and in accordance with generally and currently accepted standards and practices in the industry and profession at the time when and the location where the Services were performed.

15. Hensyn facilitated negotiations for a land lease/purchase contract for the mining operation.

16. The land/lease/purchase contract was accepted by Horizon.

17. Hensyn helped Horizon file for a Foreign Business Entity with the Kentucky Secretary of State.

18. Hensyn negotiated with Grayson Rural Electric Cooperative Corporation (GRECC) to provide Horizon with a Power Purchase Agreement (PPA) at a fair and appropriate rate.

19. Horizon reviewed, accepted, approved, and executed the GRECC PPA negotiated by Hensyn ratifying the terms for the utility rates.

20. Hensyn helped Horizon file all needed paperwork for all required permitting.

21. Hensyn successfully obtained all required government permits for Horizon pursuant to the Services Agreement.

22. On or about December 29, 2021 Horizon began purchasing power from GRECC.

23. In February 2022 Horizon notified Hensyn that it intended to expand its operations in Kentucky.

24. On or about March 2, 2022 Hensyn successfully negotiated the Fuel Adjustment Charges with GRECC and Eastern Kentucky Power Company to lower the power bill for Horizon.

25. Horizon accepted and approved of the Fuel Adjustment Charges negotiated by Hensyn.

26. Hensyn complied with all applicable federal, state and local laws, ordinances, regulations and codes applicable to the performance of the Services Agreement.

27.    Hensyn fully executed its performance obligations under the Services Agreement.

28.    Hensyn was and is entitled to the compensation stated in the Services Agreement.

29.    Horizon agreed in the Services Agreement to compensate Hensyn for the aforesaid services as follows:

   a.   Hensyn was to receive 0.1 cent for every Kilowatt Hour used in any completed mining site in relation to which Hensyn provided Services, to be measured based on the electricity bill sent by the power provided to Horizon;

   b.   Hensyn was to receive 15 brand new ant miner Sl9 miners, hosted in Horizon's mining site, upon launch of Horizon's first 10 megawatt mining facility.

   c.   Horizon was to reserve for Hensyn 10 miner spots for each new 10 megawatt facility launched; however, Hensyn will be limited to no more than 60 spots in any 60 megawatt project.

   d.   Hensyn had the option to purchase a maximum of 10 miners per 10 megawatt facility launched by Horizon. Further, Hensyn shall be limited to no more than 4S miners purchased from Horizon in any 60 megawatt facility.

   e.   If at some point in the future, Hensyn wishes to launch one or more mining projects, Horizon will reasonably provide all necessary help and miner purchase options to be negotiated in good faith at the time of launch.

   f.   Hensyn shall receive 0.1 cent for every Kilowatt Hour used in the expansion of Horizon mining sites or future Horizon mining sites in Kentucky in relation to which Hensyn provided Services, to be measured based on the electricity bill sent by the power provided to Horizon.

30.    Hensyn was entitled to receive payment and became entitled to the benefits listed within the Services Agreement (5.3) at the time at which the first 10-Megawatt facility began operating and hosting miners.

31. Horizon's obligation to provide the benefits listed herein survives the termination of the Services Agreement (5.3 and 9.3(b)).

32. Horizon agreed to indemnify, protect, and hold Hensyn harmless, including a reasonable attorney's fee arising out of or in any way connected with a breach of any representation, warranty or obligation of Horizon within the Services Agreement (7.1).

33. Hensyn performed all services and completed all conditions precedent required under the Services Agreement.

34. Horizon launched and is now operating its first 10-Megawat mining facility.

35. Horizon began paying Hensyn the compensation set forth under the Services Agreement.

36. On or about March 23, 2022 Hensyn sent power invoice #100 to Horizon.

37. Horizon paid power invoice #100 on or about March 28, 2022.

38. On or about April 15, 2022 Hensyn sent power invoice #101 to Horizon.

39. Horizon paid power invoice #101 on or about April 18, 2022.

40. On or about May 18, 2022 Hensyn sent power invoice #102 to Horizon.

41. Horizon paid power invoice #102 on or about June 9, 2022.

42. Hensyn sent invoices #103 and #104 to Horizon.

43. Horizon did not timely pay invoices #103 and #104.

44. On or about July 7, 2022 Hensyn met with representative of Horizon regarding the lack of payment of the power invoice and Terrahash.

45. On or about August 3, 2022 Horizon, through its representative, emailed Hensyn that it considered Hensyn in breach of Section 1.1(b) of the Services Agreement because the utility rates were not fair and appropriate when the utility rates increased. (Exhibit 2.)

46. Horizon claimed the increased utility rates were not what was represented to Horizon prior to signing the agreement.

47. It is the information and belief that the Power Purchase Agreement executed by Horizon expressly states that utility rates fluctuate and are subject to increase.

48. Horizon stated that it did not anticipate or plan for the increase in utility rates.

49. Horizon stated its intention to terminate the Services Agreement due to the rising utility costs.

50. On or about August 11, 2022 Hensyn gave proper notice of Horizon's breach of the Service Agreement for nonpayment and gave the appropriate time to cure the default. (Exhibit 3.)

51. Horizon refused to cure the default.

### Count I.   DECLARATION OF RIGHTS UNDER SERVICES AGREEMENT

52. Hensyn hereby incorporates and realleges the allegations set forth hereinabove as if fully set forth herein.

53. A genuine dispute and an actual controversy and disagreement exist between the parties concerning the obligation of Horizon to compensate and to continue to compensate Hensyn for the fully executed services performed by Hensyn pursuant to the Service Agreement.

54. The determination of the contractual rights of the parties under the agreement is a purely legal question and does not involve any factual findings.

55. Fluctuating utility rates were a foreseeable economic risk contemplated by the parties at the time Horizon executed the GRECC PPA and cannot be used to terminate the Service Agreement.

56. An actual controversy exists between the parties, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

57. The Court should declare the rights of Hensyn now and in the future to receive the stated compensation set forth in the Service Agreement, and more particularly that:

   a. Hensyn is entitled to receive 0.1 cent for every Kilowatt Hour used in any completed mining site in relation to which Hensyn provided Services, to be measured based on the electricity bill sent by the power provided to Horizon;

    b.    Hensyn is entitled to receive 15 brand new ant miner Sl9 miners, hosted in Horizon's mining site, upon launch of Horizon's first 10 megawatt mining facility.

    c.    Horizon is entitled to reserve for Hensyn 10 miner spots for each new 10 megawatt facility launched; however, Hensyn will be limited to no more than 60 spots in any 60 megawatt project.

    d.    Hensyn is entitled to the option to purchase a maximum of 10 miners per 10 megawatt facility launched by Horizon. Further, Hensyn shall be limited to no more than 4S miners purchased from Horizon in any 60 megawatt facility.

    e.    If at some point in the future, Hensyn wishes to launch one or more mining projects, Horizon will reasonably provide all necessary help and miner purchase options to be negotiated in good faith at the time of launch.

    f.    Hensyn shall receive 0.1 cent for every Kilowatt Hour used in the expansion of Horizon mining sites or future Horizon mining sites in Kentucky in relation to which Hensyn provided Services, to be measured based on the electricity bill sent by the power provided to Horizon.

### Count II.  BREACH OF CONTRACT

58.    Hensyn hereby incorporates and realleges the allegations set forth hereinabove as if fully set forth herein.

59.    Horizon materially breached the terms of the Service Agreement by failing to pay Hensyn invoices #103 and #104. Section 5.2(a).

60.    Horizon materially breached the terms of Service Agreement by repudiating the Service Agreement and refusing to pay Hensyn 0.1 cent for every Kilowatt Hour used in any completed mining site in relation to which Hensyn provided Services, to be measured based on the electricity bill sent by the power provided to Horizon. Section 5.2(a).

61.    Horizon materially breached the terms of Service Agreement by repudiating the

Service Agreement and refusing to provide Hensyn with the 15-brand new ant miner S19 miners. Section 5.2(b).

62. Horizon materially breached the terms of Service Agreement by repudiating the Service Agreement and refusing reserve for Hensyn 10 miner spots for the existing 10-megawatt facility in operation. Section 5.2(c).

63. That as a direct result of the aforesaid breaches Hensyn has suffered and will continue to suffer pecuniary damages.

64. That as a direct result of the aforesaid breaches Hensyn has incurred and will continue to incur indirect and consequential damages.

65. That as a direct result of the aforesaid breaches Hensyn has and will continue to incur costs, expenses, and a reasonable attorney's fee.

66. That Horizon is required under the terms of the Service Agreement to indemnify and hold harmless Hensyn for the aforesaid damages.

**WHEREFORE**, Plaintiff, Hensyn, respectfully prays that this Honorable Court:

1. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Service Agreement.

2. Find and declare that:

    a. Hensyn is entitled to receive 0.1 cent for every Kilowatt Hour used in any completed mining site in relation to which Hensyn provided Services, to be measured based on the electricity bill sent by the power provided to Horizon.

    b. Hensyn is entitled to receive 15 brand new ant miner Sl9 miners, hosted in Horizon's mining site, upon launch of Horizon's first 10-megawatt mining facility.

    c. Horizon is entitled to reserve for Hensyn 10 miner spots for each new 10-megawatt facility launched; however, Hensyn will be limited to no

   more than 60 spots in any 60-megawatt project.

  d. Hensyn is entitled to the option to purchase a maximum of 10 miners per 10-megawatt facility launched by Horizon. Further, Hensyn shall be limited to no more than 4S miners purchased from Horizon in any 60-megawatt facility.

  e. If at some point in the future, Hensyn wishes to launch one or more mining projects, Horizon will reasonably provide all necessary help and miner purchase options to be negotiated in good faith at the time of launch.

  f. Hensyn shall receive 0.1 cent for every Kilowatt Hour used in the expansion of Horizon mining sites or future Horizon mining sites in Kentucky in relation to which Hensyn provided Services, to be measured based on the electricity bill sent by the power provided to Horizon.

3. Enter judgment against Horizon for the damages sustained by Hensyn for Horizon's material breaches of the Service Agreement, including, but not limited to, direct and indirect damages, consequential and incidental damages, costs, expenses, prejudgment and post-judgment interest, and a reasonable attorneys fee.

4. Grant Hensyn such other and further relief that the Court deems proper under the facts and circumstances

         Respectfully submitted,
         WILHOIT LAW OFFICE

         */s/William H. Wilhoit*_____
         WILLIAM H. WILHOIT
         LAURA JANE PHELPS
         P.O. Box 35
         Grayson, Kentucky 41143
         (606) 474-8833
         *Attorney for Hensyn Resources, LLC*