## SERVICES AGREEMENT

This Services Agreement ("the Agreement"), dated as of July ___, 2021 (the "Effective Date") is entered into by and between HORIZON MINING, LLC ("Horizon" or "the Company"), having the mailing address _____ and Hensyn Resources, LLC ("Hensyn"), having the mailing address 189 Lallybroch Lane Ashland, KY 41102. Horizon and Hensyn may be referred to collectively as "the Parties" and each individually as a "Party."

WHEREAS, Horizon is in the business of manufacturing bitcoin miners and hosting bitcoin mining operations;

WHEREAS, Hensyn has experience and expertise, as described herein, which the Parties believe will be of assistance to Horizon; and

WHEREAS, Hensyn desires to provide the services described herein on the terms and conditions set forth in this Agreement;

THEREFORE, in consideration of the mutual terms and conditions set forth herein, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

1. **PROJECT SERVICES**

    1.1   Services.  Hensyn shall provide to Horizon the following services described in this Section 1.1 (the "Services").

    (a) Hensyn will locate and serve as a liaison between Horizon and a third-party land company tasked with locating available property lots, at prices acceptable to Horizon for lease or purchase, that: (i) are suitable and zoned for building bitcoin mining sites; (ii) have electric substations with no less than 10-Megawatt available capacity; and (iii) have appropriate water and internet connections.

    (b) Hensyn will negotiate with electric power companies on Horizon's behalf to supply electricity to Horizon at a per KWH (Kilowatt Hour) price that is fair, appropriate, and acceptable to Horizon's.

    (c) Hensyn will communicate with and serve as a liaison between Horizon and local governmental entities and electric utilities to assist Horizon in obtaining the necessary approvals and permits to build and operate bitcoin mining sites.

    (d) Hensyn will assist in the launching of a bitcoin mining facility or facilities ("the Project(s)") by locating and serving as a liaison between Horizon and other businesses or professionals necessary to provide water system solutions, drill water wells, provide electrical engineering services, or other similar services.

    1.2   Performance of Services.  Hensyn will perform the Services in a manner in accordance with generally and currently accepted standards and practices in the industry and profession at the time when and the location where the Services are performed.  Horizon will rely

on the organization, management, skill, cooperation and efficiency of Hensyn to perform the Services.

  1.3 Compliance with Laws. Hensyn shall comply with all applicable federal, state and local laws, ordinances, regulations and codes which apply to the performance of this Agreement.

2. RELATIONSHIP OF PARTIES

  2.1 No Agency. Nothing in this Agreement shall create any agency, joint venture, partnership, or other form of joint enterprise, employment or fiduciary relationship between the Parties for purposes of taxes, legal liabilities, or otherwise. Neither Party has any express or implied right or authority to assume or create any obligations on behalf of or in the name of the other Party or to bind the other Party to any contract, agreement, liability or undertaking with any third party except as expressly agreed by the Parties in writing.

  2.2 No Employee Benefits. Hensyn understands and agrees that Hensyn will not receive any employee benefits of any kind from Horizon.

3. PROPERTY RIGHTS

  3.1 Horizon Materials. Hensyn acknowledges that any access to any equipment, intellectual property, designs or data, concepts, ideas, or other Horizon materials granted to Hensyn is provided for the sole purpose of allowing Hensyn to carry out its obligations under this Agreement. Hensyn agrees that Hensyn will only use these materials to advance Horizon's business purposes and the goals of Horizon pursuant to this Agreement. Hensyn will take all reasonable steps to protect Horizon's ownership interest in these materials and will not create a security interest in or by action or inaction misrepresent the ownership of the Horizon materials. Hensyn agrees to use reasonable care not to damage any Horizon materials.

  3.2 Work Product. Any work performed or completed by Hensyn related to the Services shall be, and shall remain, the exclusive property and work product of Horizon, and Hensyn agrees that it has no claim to any of the property or work product.

  3.3 Cooperation in Enforcement. In the event that an infringement or violation of any of Horizon's rights in and to the Project is known to Hensyn, Hensyn shall promptly notify Horizon and Horizon shall have the sole right to bring an action to enforce all intellectual property or other rights belonging to it, and Horizon will be entitled to retain the entire proceeds of the recovery from any such claim or action. Without limiting its other obligations herein, Hensyn shall cooperate with Horizon, to the extent reasonable, in the enforcement of its rights.

  3.4 Assignment. Hensyn agrees that all trademarks, copyrightable or patentable material, and trade secrets developed by Hensyn in performing this Agreement that relate in any manner to the business of Horizon are owned solely by Horizon and will be considered "works for hire." Hensyn will assist Horizon in securing Horizon's rights to all intellectual property so developed.

4.  INSURANCE

Hensyn understand that Horizon will not be providing or offering Hensyn any type of insurance. Hensyn further agrees that it will purchase its own workers' compensation and general liability insurance. Hensyn shall add Horizon as an additional insured to the insurance policies.

5.  COMPENSATION

5.1  Sole Compensation. Hensyn shall receive only the compensation described in this Agreement. Hensyn shall not receive any employee benefits provided to Horizon employees, and Horizon shall not be responsible for payment of workers' compensation, disability benefits, or unemployment benefits to Hensyn or Hensyn's employees, or for withholding and paying employment taxes related to such employees.

5.2  Compensation. Compensation for the Services shall be as follows:

(a)  Hensyn shall receive 0.1 cent for every Kilowatt Hour used in any completed mining site in relation to which Hensyn provided Services, to be measured based on the electricity bill sent by the power provided to Horizon;

(b)  Hensyn shall receive 15 brand new ant miner S19 miners, hosted in Horizon's mining site, upon launch of Horizon's first 10 megawatt mining facility. Hensyn will be solely responsible for the basic cost of electricity and maintenance related to these 15 miners.

(c)  Horizon shall reserve for Hensyn 10 miner spots for each new 10 megawatt facility launched; however, Hensyn will be limited to no more than 60 spots in any 60 megawatt project.

(d)  Hensyn will have the option to purchase a maximum of 10 miners per 10 megawatt facility launched by Horizon. Further, Hensyn shall be limited to no more than 45 miners purchased from Horizon in any 60 megawatt facility.

(e)  If at some point in the future, Hensyn wishes to launch one or more mining projects, Horizon will reasonably provide all necessary help and miner purchase options to be negotiated in good faith at the time of launch.

(f)  Hensyn shall receive 0.1 cent for every Kilowatt Hour used in the expansion of Horizon mining sites or future Horizon mining sites in Kentucky in relation to which Hensyn provided Services, to be measured based on the electricity bill sent by the power provided to Horizon.

5.3  Payment.  Hensyn shall not be paid and will not receive the benefits described in this Section if the appropriate permitting is not obtained or if any of Horizon's operations are terminated or stopped solely because of Hensyn's failure to comply with its obligations under this Agreement and the Agreement is terminated pursuant to Section 9.2(b). Hensyn shall receive payment and become entitled to the benefits listed herein at the time at which the first 10 Megawatt facility is operating and hosting miners, and Horizon's obligations to provide

the benefits listed herein shall survive the termination of this Agreement, unless that termination is pursuant to Section 9.2(b) of the Agreement.

6. EXCLUSIVITY

The Parties agree that the exclusivity rights described in this Section 6 will be limited to the State of Kentucky (the "Exclusive Territory"). The Parties agree that the services that are being offered to each other in the Agreement are offered on an exclusive basis in the Exclusive Territory. The Parties shall not, without the prior written consent of the other Party, provide any services described in this Agreement to a third party in the Exclusive Territory.

7. INDEMNIFICATION

7.1 Indemnification Obligations. Hensyn shall indemnify, protect, hold harmless, and defend Horizon, its officers, directors, affiliates, subsidiaries, agents and employees from and against any and all claims, demands, suits, losses, liabilities, expenses and damages, including costs or and attorney's fees, arising out of or in any way connected with (i) infringement of trademark or intellectual property provided by Hensyn; (ii) injuries or any other personal or property damages relating to or resulting from the Services; or (iii) breach or inaccuracy of any representations, warranties or obligations of Hensyn contained in this Agreement. The duties set forth in this Section shall survive the termination of this Agreement.

Horizon shall indemnify, protect, hold harmless, and defend Hensyn, its officers, directors, affiliates, subsidiaries, agents and employees from and against any and all claims, demands, suits, losses, liabilities, expenses and damages, including costs or and attorney's fees, arising out of or in any way connected with (i) infringement of trademark or intellectual property provided by Horizon; or (ii) breach or inaccuracy of any representations, warranties or obligations of Horizon contained in this Agreement. The duties set forth in this Section shall survive the termination of this Agreement.

7.2 Indemnification Procedures. The Party to be indemnified shall give the other Party (a) prompt notice of the relevant claim; provided, however that failure to give notice shall not relieve the indemnifying Party of its liability or obligation hereunder except to the extent of any material prejudice resulting directly from such failure; and (b) reasonable cooperation in the defense of such claim. The indemnifying Party shall have the right to control the defense and settlement of any such claim through reputable independent counsel reasonably satisfactory to the Party to be indemnified; provided, however, that the indemnifying Party shall not, without the prior written approval of the other Party, settle or dispose of any claims in a manner that affects the Party to be indemnified's rights or interests. The Party to be indemnified shall have a right to participate in the defense at its own expense.

8. LIMITATION OF LIABILITY.

IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THIS AGREEMENT. ANY DAMAGES PAYABLE BY HORIZON SHALL NOT EXCEED THE COMPENSATION ACTUALLY OWED BY HORIZON UNDER THIS AGREEMENT. THIS SECTION DOES NOT APPLY IF DAMAGES ARE CAUSED BY THE INTENTIONAL ACTS OF HENSYN.

9. TERMINATION

9.1 Term. The term of this Agreement commences on the Effective Date and continues until completion of the Services unless it is earlier terminated in accordance with the Agreement.

9.2 Termination. The Agreement may be terminated as follows:

(a) In the event that all of the Projects which have, as of that date, been initiated pursuant to this Agreement are completed, either Party may terminate the Agreement by providing the other with thirty (30) days written notice.

(b) Either Party may terminate this Agreement, effective upon written notice, to the other (the "Defaulting Party") if the Defaulting Party (i) materially breaches the Agreement, and such breach is incapable of cure, or with respect to a material breach capable of cure, the Defaulting Party does not cure such breach within fifteen (15) days after receipt of written notice of such breach; or (ii) becomes insolvent or is generally unable to pay debts as they come due; files or has filed against it a petition for voluntary or involuntary bankruptcy; makes or seeks to make a general assignment for the benefit of its creditors; has appointed a receiver or similar agent; or is dissolved or liquidated.

9.3 Effect of Termination. Upon the termination of this Agreement:

(a) Horizon shall immediately make all payments that are then due and payable to Hensyn under this Agreement;

(b) Horizon shall continue to make any future payments in accordance with its obligations under Section 5 of the Agreement; and

(c) Each Party shall promptly return to the other (or at the other Party's direction destroy) all Confidential Information belonging to the other party in that Party's custody or control and shall erase or remove any remaining copies of these materials from any of its computers and equipment.

10. CONFIDENTIALITY

10.1 Confidential Information. "Confidential Information" means any non-public information provided to either Party about the business of the other Party. Confidential Information also includes any personal information regarding a Party's past, present or potential clients, beneficiaries, funders, donors, prospects, and employees. Confidential Information also means information provided to a Party by another that the Party is obligated to keep confidential.

10.2 <u>Nonuse and Nondisclosure</u>. Neither Party will, during or after the term of this Agreement, use Confidential Information for any purpose other than performing their respective obligations under the Agreement or disclose Confidential Information to any third party. Both Parties also agree to take reasonable measures to prevent any unauthorized disclosure of Confidential Information.

11. <u>WARRANTIES.</u>

Hensyn represents, covenants and warrants to Horizon that (a) it has the capacity, knowledge and qualifications necessary to perform the Services in a professional and workmanlike manner in accordance with generally and currently accepted standards and practices in the industry and profession at the time when and the location where the Services are performed and that the Services shall meet this standard; (b) it is aware of Horizon's requirements and intended use; (c) the Services shall satisfy such requirements in all material respects; (d) the work produced by Hensyn and used by Horizon will not in any way constitute an infringement or violation of any copyright, trade secret, trademark, patent, invention, proprietary information, non-disclosure, contract, or other rights of any third party and there is currently no actual or threatened lawsuit by any such third party based on a violation of such right by Hensyn; and (e) it will not violate any right of publicity or privacy of any third person.

EXCEPT FOR THE EXPRESS WARRANTIES CONTAINED IN THIS AGREEMENT, NEITHER HENSYN NOR ANY PARTY ON HENSYN'S BEHALF HAS MADE OR MAKES ANY EXPRESS OR IMPLIED WARRANTIES, EITHER ORAL OR WRITTEN, WHETHER ARISING BY LAW, COURSE OF DEALING, COURSE OF PERFORMANCE, USAGE OF TRADE, OR OTHERWISE, ALL OF WHICH ARE EXPRESSLY DISCLAIMED.

12. <u>NON-SOLICITATION.</u>

In view of Hensyn's access to Horizon's Confidential Information and the value of such Information, during the term of the Agreement and for a period of one (1) year after this Agreement had terminated, Hensyn will not, without prior written approval of Horizon, ask: (1) any customers or vendors, or potential customers or vendors, of Horizon with which Hensyn came into contact while performing the Services to hire Hensyn or (2) any employee, representative or agent of Horizon to stop working with Horizon.

13. <u>NO ASSIGNMENT OR OUTSOURCING.</u>

Hensyn may not assign this Agreement and / or any rights and / or obligations hereunder without the prior written consent of Horizon and any such attempted assignment shall be void. Hensyn further agrees that it will not outsource any of the Services without the prior written consent of Horizon.

14. <u>GENERAL PROVISIONS.</u>

14.1 <u>Severability</u>. If any provision of this Agreement shall be held to be invalid, illegal, or otherwise unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired.

14.2 <u>Drafting.</u> The Parties acknowledge and confirm that each Party had the opportunity to review and revise this Agreement. The Parties agree that the rule of construction to the effect that any ambiguities are to be or may be resolved against the drafting party shall not be employed in the interpretation of the Agreement to favor one Party against the other.

14.3 <u>Notices</u>. All notices, consents, claims, demands, waivers and other similar communications shall be in writing and addressed to the Parties at the addresses set forth on the initial page of this Agreement (or to such other address that may be designated by the receiving party from time to time in accordance with this section). All Notices shall be delivered by personal delivery, recognized overnight courier (with all fees pre-paid), or certified or registered mail (in each case, return receipt requested, postage prepaid). Except as otherwise provided in this Agreement, a Notice is effective only (a) upon receipt by the receiving party, and (b) if the party giving the Notice has complied with the requirements of this Section.

14.4 <u>Headings and Interpretation</u>. The headings in this Agreement are for reference only and do not affect the interpretation of this Agreement. For purposes of this Agreement: (a) the words "include," "includes" and "including" are deemed to be followed by the words "without limitation"; (b) the word "or" is not exclusive; (c) the words "herein," "hereof," "hereby," "hereto" and "hereunder" refer to this Agreement as a whole; (d) words denoting the singular have a comparable meaning when used in the plural, and vice-versa; and (e) words denoting any gender include all genders. Unless the context otherwise requires, references in this Agreement: (x) to an agreement, instrument or other document means such agreement, instrument or other document as amended, supplemented and modified from time to time to the extent permitted by the provisions thereof; and (y) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder.

14.5 <u>Amendment and Modification</u>. No amendment to or modification of or rescission, termination, or discharge of this Agreement is effective unless it is in writing and signed by an authorized representative of each Party.

14.6 <u>Waiver</u>. No waiver by either Party of any of the provisions hereof shall be effective unless explicitly set out in writing and signed by the Party so waiving. No waiver by any Party shall operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power, or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

14.7 <u>No Third-Party Beneficiaries</u>. This Agreement benefits solely the Parties to this Agreement and their respective permitted successors and assigns, and nothing in this

7

Agreement, express or implied, confers on any other person any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement.

14.8 Choice of Law. This Agreement and all matters arising out of or relating to this Agreement, whether sounding in contract, tort, or statute are governed by, and construed in accordance with, the laws of the Commonwealth of Kentucky, United States of America, without giving effect to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of Kentucky.

14.9 Choice of Forum. Any action, litigation, or proceeding of any kind whatsoever in any way arising from or relating to this Agreement and all transactions contemplated hereunder shall be brought in the United States District Court for the Eastern District of Kentucky or, if such court does not have subject matter jurisdiction, the courts of the Commonwealth of Kentucky sitting in Boyd County, and any appellate court from any thereof. Each Party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts, agrees to bring any such action, litigation, or proceeding only in such courts, and agrees that such courts are a convenient forum for adjudication. Each Party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

14.10 Counterparts. This Agreement may be executed in counterparts, each of which is deemed an original, but all of which together are deemed to be one and the same agreement. A signed copy of this Agreement delivered by email or other means of electronic transmission is deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

14.11 Entire Agreement. This Agreement constitutes the sole and entire agreement of the Parties with respect to the subject matter contained herein and supersedes all prior written and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

| Horizon Mining, LLC | Hensyn Resources, LLC. |
|---|---|
| By _____ | By _____ |
| Name: _Christina Wang_ | Name: _____ |
| Title: _Manager_ | Title: _____ |

0125140.0726089  4850-2026-7761v1