IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND
CIVIL ACTION NO. 22-cv-0085 DLB-EBA

HENSYN RESOURCES, LLC,                                           PLAINTIFF,

Vs.

HORIZON MINING, LLC,                                             DEFENDANT,

## RESPONSE TO MOTION TO DISMISS

**COMES** NOW THE PLAINTIFF, HENSYN RESOURCES, LLC, by and through counsel, and for its Response to Defendant's Motion to Dismiss, states as follows:

### INTRODUCTION

The matter arises out of a contractual dispute between the parties relating to the creation of a bitcoin mining operation in Kentucky. Hensyn filed a Declaratory Judgment action to determine its rights for future compensation based upon the monthly utility usage of Horizon mining, and a breach of contract claim for nonpayment of amounts already owed under the service agreement. Defendant's motion to dismiss should be denied because the declaration of rights action is not duplicative of the breach of contract claim but seeks adjudication of its future rights and/or damages.

### FACTUAL DISPUTES

First, it should be noted that Horizon denies the parties' express agreement on the drafting of the Service Agreement. (R. 1-1, Service Agreement at ¶14.2*).* Horizon repeatedly misstates that the Service Agreement was drafted by Hensyn. (R. 11, Motion to Dismiss at pages 2 (twice) and 5, fn 5). Of course, the clear implication is to invoke the contractual rules of construction against the scrivener. However, it was actually Horizon that submitted the first draft of the Service

1

Agreement. Horizon's first proposal and the finished Service Agreement both included an agreement that: "The Parties agree that the rule of construction to the effect that any ambiguities are to be or may be resolved against the drafting party shall not be employed in the interpretation hereof to favor any Party against another." *Id.* Just a cursory review of the agreement repudiates Horizon's allegations to the contrary in its initial motion.

Second, Horizon then takes a new position that the mining operation was not a "10-Megawatt facility" as contemplated by the parties. According to the Service Agreement, Hensyn was to locate property with 10-Megawatt available capacity and negotiate with electric power companies a per KWH (Kilowatt Hour) price that is fair, appropriate, and acceptable to Horizon. (R. 1-1 at ¶ 1.1(a-b)). It was Horizon, however, that executed the power supply contract with East Kentucky Power Cooperative, Inc. (EKPC) and Grayson Rural Electric Cooperative Corporation (GRECC). Hensyn was not a party to that power supply agreement.

Hensyn's compensation payment was predicated on Horizon launching this 10-Megawatt facility. (R. 1-1, at ¶ 5.3). The Service Agreement even contemplated the launch of additional 10-Megawatt facilities for extra remuneration. (R. 1-1 at ¶ 5.2 (c-d)). The parties' purpose was realized, and this first 10-Megawatt facility was launched. Horizon accepted and did approve of this recently launched 10-Megawatt facility and began compensating Hensyn pursuant to 5.2(a) of the Service Agreement.

Indeed, Horizon admitted in its notice of financial damage email that "Hensyn did find an appropriate location with the necessary utilities." (R. 1-2, page 1). However, its complaint was that "Hensyn has not fulfilled its obligation to provide electricity at a price that is fair and appropriate for Horizon's mining operations." *Id.*. Horizon's representative stated:

> Prior to signing an agreement with the electric company in Kentucky and going live at the site, <u>Horizon was told that the price would be 4 cents</u>. 4 cents is a fair and appropriate price for Horizon's mining operations. <u>Based on this representation, Horizon signed an agreement</u> with the power company and made substantial financial improvements to the Premises.

(R 1-2. Emphasis added.)

Despite the contention in Horizon's motion, it sought to terminate the Service Agreement because it was "told" that the price of utilities would be "4 cents" in the utility contract that Horizon reviewed, approved, and signed with EKPC and GRECC. Needless to say, the price of utilities is not that simple and is *never* fixed. Horizon's expressed termination of the Service Agreement was due solely to the cost of utilities increasing. (R 1-2). The rising cost was based upon the written contract accepted by Horizon with EKPC and GRECC. So, Horizon's notice of breach was based upon its claimed ignorance of how the utility rate was calculated in the contract it accepted and signed.

Frankly, most of the disputed facts discussed in Horizon's motion and this response are not relevant to the issue at hand. What is relevant is that Horizon is claiming that each month's utility bill is causing it damages and will continue in the future. As such, Horizon intends to file a counterclaim. (Tom Mills, and R. 11 at page 5). Similarly, Hensyn contends it is entitled to compensation for each future month based upon the utility usage during that month. Neither parties' claim for damages can be determined presently because each month brings a new amount of payment and potential breach.

Horizon now takes the position that even should it launch a 10-Megawatt facility, it will not pay Horizon any compensation in the future months under the Service Agreement, but instead will incur additional damages each succeeding month. These factual disputes as to future breaches, rights to compensation and/or damages are important to the pending motion to dismiss the declaration of rights action.

Most importantly, Horizon asserts a new twist by claiming it has not launched a 10-Megawatt facility. (R. 11 at page 5). Under this new premise, Hensyn is not entitled to any compensation—as of yet; therefore, there cannot be a breach of contract for nonpayment. Of course, Hensyn requests the Court to declare its rights to future compensation for the succeeding months of utility usage by Horizon per the Service Agreement. (R 1. at ¶ 57(a)).

## STANDARD OF REVIEW

On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the "factual allegations in the complaint must be regarded as true." *Scheid v. FannyFarms Candy Shops, Inc.*, 859 F.2d 434,436 (6th Cir.1988) (quoting *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983)). In order to survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and to nudge his claim "across the line from conceivable to plausible." *Id*. at 1974. In practice, a complaint must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993)(quotations omitted).

## DECLARATORY JUDGMENT ACTION

The Declaratory Judgment Act (DJA), in 28 U.S.C. § 2201(a), states:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The DJA does not create independent jurisdiction, but this Court has diversity jurisdiction allowing it to entertain this declaratory suit. *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir.2007). The DJA is an enabling Act that grants the district court discretion to entertain a declaratory action. It is not mandatory. *AmSouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir. 2004).

There also must be a controversy, and the plaintiff "must show actual present harm or a significant possibility of future harm." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001).

The Sixth Circuit set out five factors that the trial court is to consider in determining whether a claim is suitable for a declaratory ruling.

(1) whether the declaratory action would settle the controversy;

4

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk Western R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

These "*Grand Trunk*" factors are not equally weighted, and the district court is mainly takes into consideration "three things: efficiency, fairness, and federalism" when making its analysis. *Western World Ins. Co. v. Hoey,* 773 F.3d 755, 759 (6th Cir. 2014).

### ANALYSIS OF *GRAND TRUNK* FACTORS

**1. The declaratory action would settle the controversy.**

**2. The declaratory action would serve a useful purpose in clarifying the legal relations in issue.**

The first two *Grand Trunk* factors typically overlap as settling the controversy will clarify the legal relations in issue. *United Specialty Insurance Company v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019). These two factors indeed overlap in the case *sub judice*, so they will be addressed together as they both weigh in favor of the court exercising jurisdiction.

Horizon focuses its motion on these two factors. It cites several cases for the proposition that the declaratory judgment action and a breach of contract action are duplicative of each other, so the declaratory action would not serve a useful purpose or settle the controversy as that would be accomplished in the breach of contract claim. Horizon cites with emphasis *Time Warner Cable Midwest LLC v. Pennyrile Rural Elec. Coop.*, 2015 WL 4464105 (W.D. Ky. Jul. 21, 2015) for the proposition that a "declaratory judgment is to enable the parties to obtain adjudication of rights before an actual injury occurs, to settle a matter before it ripens into a violation of the law or a

5

breach of contract."

However, according to Horizon, it cannot be held in breach of contract because it has not launched a 10-Megawatt facility, so it was not obligated to pay Hensyn its compensation. (R. 11 at Page 4). Under Horizon's new version of the facts, Henysn's breach of contract claim is premature. It asserts that the suit was brought before an actual injury occurred, so the dispute has not ripened into a breach of contract. *Id.*

Based upon how Horizon frames its position, the parties' dispute requires a declaration of the parties' rights under the Service Agreement. *Id.* Under Horizon's theory, it has not launched a 10-Megawatt facility, yet. Arguably, it could in the future, but the rights of the parties are in question because of the anticipatory repudiation of the Service Agreement due to the cost of rising utilities as originally stated. Only a declaratory action can resolve this dispute, as framed by Horizon in its motion.

Further, Hensyn's payment of compensation, in part, is based upon the monthly utility usage of the bitcoin mine upon the launch of a 10-Megawatt facility. (R. 1-1, at 5.2(a)). The amount of that future compensation cannot be determined today because it requires each monthly utility bill to assess the amount. Hensyn requests that this court declare the rights and obligations of the parties going forward. It would be extremely difficult for the court or the trier of fact to calculate damages when those damages have not yet accrued. Hensyn is requesting that the court clarify Horizon's legal duties going forward.

"The 'useful purpose' served by the declaratory judgment action is the clarification of legal duties for the future, rather than the past harm…." *AmSouth Bank* at 786.

The breach of contract claim only determines the "past harm" for each month Horizon used Kilowatt Hours and did not pay Hensyn. The breach of contract claim cannot determine the future damages because Hensyn's compensation is tied to each month's utility usage. Only a declaratory judgment is useful in resolving the dispute between the parties.

    **3.**    <u>**The declaratory action is not being used for procedural fencing.**</u>

    **4.**    <u>**The declaratory action does not offend the comity between the federal and state courts.**</u>

The third and fourth *Grand Trunk* factors are also closely aligned. They are both concerned with forum shopping. The Service Agreement contains a choice of forum clause that any litigation would be brought in the United Sates District Court for the Eastern District of Kentucky as the amount in controversy of both Hensyn's claim and Horizon's counter-claim exceed the minimal jurisdictional amount. (R. 1-1 at 14.9). These two factors weighs in favor of maintaining the declaratory action.

    **5.**    <u>**There is no alternative remedy that is better of more effective.**</u>

Simply stated, there is no alternative remedy to determine the rights of the parties under the Service Agreement going forward. The Service Agreement sets the forum in this Court. Under Horizon's position of the case, there can be no breach of contract yet; thus, Hensyn's breach of contract claim will fall short. Only the declaratory action can effectively determine the rights of the parties in the future.

#### CONCLUSION

Taking the facts in a light most "favorable" to the Plaintiff for purposes of the motion to dismiss (only), the breach of contract claim may not resolve the dispute because of Horizon's factual assertion that Henysn's right to compensation has not accrued; so, there cannot be a breach of contract—thus far. However, Horizon has expressly stated that it has no intention of paying Hensyn in the future; therefore, a declaratory action is necessary to resolve the dispute between the parties that has not yet ripened into a breach. Finally, both parties' claims for damages are for future damages that cannot be calculated presently. Because the future rights and obligations are in controversy, a declaratory action is appropriate.

**WHEREFORE**, Plaintiff, Hensyn, respectfully prays that this Honorable Court overrule

Defendant, Horizon's motion to dismiss.

                        Respectfully submitted,
                        WILHOIT LAW OFFICE, PLLC

                        */s/William H. Wilhoit*_____
                        WILLIAM H. WILHOIT
                        P.O. Box 35
                        Grayson, Kentucky 41143
                        (606) 474-8833
                        *Attorney for Hensyn Resources, LLC*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing Rule 7.1 Disclosure Statement was served o the following counsel of record via the Court's electronic filing system on this 3rd day of March, 2023.

| | |
|---|---|
| Hon. Daniel E. Danford | Hon. John L. Tate |
| Stites & Harbison PLLC | Frederick R. Bentley |
| 250 W Main St., Ste 2300 | Stites & Harbison PLLC |
| Lexington, KY  40507 | 400 W Market St, Ste 1800 |
| | Louisville, KY  40202 |