# Exhibit B

## INDUSTRIAL POWER AGREEMENT
## WITH INTERRUPTIBLE SERVICE

**THIS AGREEMENT,** made, entered into and effective this 15ᵗʰ day of October 2021, by and between **East Kentucky Power Cooperative, Inc.,** a Kentucky corporation with its principal offices at 4775 Lexington Road, Winchester, Kentucky 40391 ("EKPC"), **Grayson Rural Electric Cooperative Corporation,** a Kentucky corporation with its principal offices at 109 Bagby Park, Grayson, Kentucky 41143 ("Cooperative"); and **Horizon Mining, LLC,** a Texas limited liability corporation with its principal offices at 3009 Pasadena Freeway, Suite 140, Pasadena, Texas 77503 ("Customer").

### WITNESSETH:

**WHEREAS,** Cooperative is a rural electric cooperative corporation providing retail electric service in Elliott County, Kentucky; and

**WHEREAS,** Cooperative is a member of EKPC and purchases all its wholesale electric power and energy requirements from EKPC pursuant to a Wholesale Power Contract dated October 1, 1964; and

**WHEREAS,** Customer is a member of Cooperative and purchases, or desires to purchase, retail electric power and energy needs from Cooperative, under the terms and conditions contained herein, to serve its Elliott County cryptocurrency mining facilities and associated structures and appurtenances (hereinafter referred to as its "Facility"); and

**WHEREAS,** it is the purpose and intent of the Customer, Cooperative and EKPC to assure that all incremental costs associated with the system upgrades and energy purchases contemplated herein are assumed by the Customer so that no other customer of Cooperative, and no other Owner-

1

Horizon000091

Member of EKPC, are called upon to subsidize or otherwise pay incremental costs arising from, or related to, the Parties' performance of this Agreement; and

**WHEREAS**, EKPC fully integrated into the PJM Interconnection, LLC ("PJM") regional transmission system on June 1, 2013;

**NOW, THEREFORE**, in consideration of the mutual covenants, promises, premises, terms and conditions contained herein, the Parties agree as follows:

1. <u>**Term**</u>.  Subject to the provisions of Paragraph 28 below, this Agreement shall become effective upon the date above and shall continue in effect for an Initial Term of three (3) years from said date.  The Agreement may be renewed by written confirmation signed by EKPC, Cooperative and Customer for up to two (2) additional three (3) year terms.

2. <u>**Rates and Charges**</u>.

   a.    Customer shall pay Cooperative monthly for power and energy made available under this Agreement in accordance with the rates, charges, and provisions defined herein and as modified, replaced, or adjusted from time to time and approved by the Kentucky Public Service Commission ("Commission").

   b.    For billing from EKPC to Cooperative, EKPC will provide wholesale electricity to Cooperative for Customer pursuant to the rates, charges, and provisions of EKPC's: (1) Rate B; and (2) Rate D – Interruptible Service.

   c.    For billing from Cooperative to Customer, Cooperative will provide power and energy to the Customer pursuant to the rates, charges, and provisions of Cooperative's: (1) Schedule 13(b) – Large Industrial Service – HLF; and (2) Schedule D – Involuntary Interruptible Service.

Horizon000092

3.    **Availability of Power**.  Subject to the other provisions of this Agreement, Cooperative shall make available to Customer, and Customer shall take and purchase from Cooperative, all of Customer's requirements for electric power and energy and related services for the operation of Customer's Facility.  The power and energy made available to Customer hereunder shall be delivered, taken, and paid for subject to the provisions of Paragraph 2 of this Agreement and the tariffs set forth therein, as modified from time to time by the Commission.  In the event of any conflict between the provisions of this Agreement and said tariffs, the latter shall control.

a.    **Delivery Point and Voltage**.  The Point of Delivery for firm power and energy made available hereunder shall be the point(s) at which Customer's Facility connects to Cooperative's facilities.  The power and energy made available hereunder shall be in the form of 3-phase alternating current at a frequency of approximately sixty (60) hertz and at a nominal voltage of 12.47 kilovolts ("kV") at the metering point.

b.    **Determination of Contract Demand**.  The "Contract Demand" for service under this Agreement shall be 9,000 kilowatts ("kWs") throughout the Initial Term of this Agreement and any subsequent renewal thereof.

c.    **Changes to Contract Demand**.  Customer shall have the right to decrease said levels of Contract Demand in increments not to exceed 1,000 kW by giving written notice one month prior to the date of the desired change, provided, however, the Contract Demand shall not be reduced below 5,000 kWs. Customer shall not have the right to increase the level of Contract Demand above 9,000 kWs without the

3

Horizon000093

consent of EKPC and Cooperative. Customer acknowledges that EKPC will install protective equipment to ensure that the 9,000 kW demand is not exceeded.

d. **Capacity Purchases.** The Customer acknowledges and agrees that EKPC or the Cooperative may be required to secure additional capacity to serve Customer's load. If additional capacity is secured through a market purchase, then the Customer will be responsible for the costs of the market purchase agreement. The costs of the market purchase agreement will be disclosed separately on the Customer's monthly bill. The determination of the cost associated with a market purchase will be based on EKPC's participation in the PJM market and will likely be obtained through bilateral purchase arrangements between EKPC and a third-party. If the total capacity requirement for EKPC in any year is not increased with the inclusion of the Customer's load, or if EKPC elects to satisfy an increased capacity requirement through the construction of its own capacity resource(s), there will be no purchase or arrangement for additional capacity and consequently no additional capacity charges for that year.

e. **Minimum Bill.** The minimum bill will equal the minimum bill as defined in the Cooperative's Schedule 13(b) – Large Industrial Service - HLF, plus the cost of any applicable capacity purchases and other customer specific costs, as described throughout this Agreement.

4. **Interruptible Service.** In accordance with Cooperative's Schedule 13(b) – Large Industrial Service – HLF and Schedule D – Involuntary Interruptible Service, service to Customer may be interrupted by approved communication medium from EKPC's Market

4

Horizon000094

Operations Center ("MOC"). Customer chooses 2,250 kW of Firm Load with the balance
being Interruptible Demand. Interruptible Demand shall not exceed 6,750 kW.

a.  **EKPC Economic Interruptions.**  EKPC may interrupt Customer to avoid
purchasing energy from the PJM Market (an "Economic Interruption"). EKPC
shall notify Customer that it is calling for an interruption and the notice shall be
defined as an Economic Interruption and include the number of hours of such
interruption. EKPC will endeavor to provide as much advance notice of
interruptions as practicable, but the customer will have 30 minutes to reduce its
electric power load to the Firm Load level. Customer shall have the opportunity to
buy-through any Economic Interruption and will pay for such buy-through energy.
The rate shall be EKPC's out-of-pocket cost at the PJM EKPC Zone during the
interruption hours, plus Cooperative's distribution charge. The amount of buy-
through energy billed by the Cooperative to the Customer will be the actual energy
consumed by the Customer above the Firm Load each hour of the Economic
Interruption. Interruptible buy-through energy shall not include the base energy
charge, a fuel adjustment charge or environmental surcharge.

b.  **EKPC Reliability Interruptions.**  EKPC has the right to call for a load-reducing
interruption of Customer's Interruptible Demand (a "Reliability Interruption") to
participate in the PJM Demand Response Programs. EKPC shall notify Customer
that it is calling for an interruption and the notice shall be defined as a Reliability
Interruption and include the number of hours of such interruption. Customer must
interrupt its Interruptible Demand, and buy-through energy provisions as described
above are not available for Reliability Interruptions. For Reliability Interruptions,

Horizon000095

the terms and conditions of PJM's Capacity Program then in place shall apply. Under that Program, PJM shall notify EKPC of a Reliability Interruption 30 minutes prior to the start of the interruption per the Cooperative's Interruptible Rider. EKPC shall notify Customer of such interruption immediately and Customer shall reduce its load to the Firm Load level defined above. PJM requires a one (1) hour interruption annually to test and verify load reduction capabilities if a Reliability Interruption has not been called for the PJM calendar year.

c.    **EKPC Physical Interruptions**. If, during the term of this Agreement, the Customer's Interruptible Demand fails to clear any of PJM's Base Residual Auctions ("BRA") as a Demand Response resource for any given PJM Delivery Year as a result of PJM's Minimum Offer Price Rule or otherwise, EKPC may nevertheless call for an EKPC Physical Interruptions during said Delivery Year, consistent with the terms for EKPC Reliability Interruptions set forth above. The Customer may buy through an EKPC Physical Interruption. The buy through price shall be the current delivery year BRA closing price for the EKPC zone times three hundred sixty-five (365) times the Interruptible Demand divided by twelve (12) for that month.

d.    **Interruption Hours and Notice**. Customer is contracting for interruptible service for all demand over the Firm Load as set forth above, with a total annual interruption of up to 400 hours. The sum of all interruptions shall not exceed 400 hours on an annual basis. The annual period shall start on June 1 and end on May 31 of the following year. However, during the initial term of this Agreement, the annual period shall begin with the Effective Date of the Agreement and end on May

6

Horizon000096

31 of the following year. The total interruptible hours during the initial term shall be pro-rated based on actual start date but shall not exceed 400 hours. Interruptions may occur between 6:00 a.m. to 9:00 p.m. EPT during the months of November through April and between 10:00 a.m. to 10:00 p.m. EPT during the months of May through October. No interruption shall last more than 12 hours.

Notification of an interruption will be provided by EKPC to the Customer by a communication medium approved by all parties from EKPC's MOC to the Customer. The Customer's Point of Contact ("POC") to provide the communication of the notice of interruption is as follows:

| Primary POC | Name | Wesley Wang |
|---|---|---|
| | Position | Project Lead |
| | Address | 4818 4th Street |
| | | Baldwin Park, CA 91706 |
| | Phone | (626) 327-6601 |
| | Email | wesley@horizonmining.us |
| | Text | (626) 327-6601 |

| Secondary POC | Name | Philip Zhu |
|---|---|---|
| | Position | Project Lead |
| | Address | 4818 4th Street |
| | | Baldwin Park, CA 91706 |
| | Phone | (909) 900-5118 |
| | Email | Philip.zhu@horizonmining.us |
| | Text | (909) 900-5118 |

EKPC's POC is the MOC system operator on duty at the time of communication. The phone number for EKPC's POC is (859) 745-9210, and email is generation.operations@ekpc.coop.

5.  **Responsibilities of Customer**.

a.  **Availability**. It is the responsibility of Customer to be sure its phone is working and that someone is available 24 hours per day, 365 days per year to promptly

7

Horizon000097

respond to the EKPC communication. Customer shall acknowledge to EKPC that they received notice of an interruption. If Customer does not acknowledge the notice of interruption from EKPC for whatever reason, Customer will be considered as failing to interrupt and the failure to interrupt provisions of the Cooperative's Schedule 13(b) – Large Industrial Service – HLF and Schedule D – Involuntary Interruptible Service will be invoked.

b. **System Upgrades.** The Customer shall be liable for payment of all costs necessary to upgrade or improve EKPC's or Cooperative's respective systems in order to be able to fully, adequately and safely serve Customer's Facilities now or in the future. These costs shall be paid by Customer prior to delivery of any power and energy, or any increase in Contract Demand, hereunder.

c. **Customer Facilities.** Neither Cooperative nor EKPC shall be obligated to provide, or be responsible for providing, protective equipment for Customer's lines, facilities, and equipment to protect against single phasing, low voltage, short circuits, or any other abnormal system conditions, but Cooperative or EKPC, as the case may be, may provide such protective equipment as is reasonably necessary for the protection of its own property and operations. The electrical equipment installed by Customer shall be capable of satisfactory coordination with any protective equipment installed by Cooperative or EKPC. Any back-up generator installed by Customer at Customer's Facility may only be used during periods of loss of service from Cooperative.

6. **Transmission.** EKPC shall arrange and be responsible for all transmission service for the energy contemplated to be purchased hereunder and shall deliver or cause to be delivered

8

Horizon000098

such energy to the point(s) of delivery of all current and future energy sales to the Cooperative and from which the Cooperative's electric distribution system currently delivers energy to the Customer. EKPC shall schedule or arrange for scheduling services with its transmission providers to deliver the energy to said point(s) of delivery, as necessary.

7. **Distribution**. The Cooperative shall arrange and be responsible for all distribution service for the energy contemplated to be purchased hereunder and shall deliver or cause to be delivered such energy to the Customer's meter(s).

8. **Continuing Jurisdiction of the Commission**. The rates, terms and conditions of this Agreement for electric service shall be subject to modification or change by Order of the Commission, during the Initial Term and thereafter. The rates provided hereinabove shall be adjusted to reflect any Commission-approved changes in applicable tariff rates, including any changes in the base rates, riders or surcharges approved for EKPC and/or Cooperative on or after the Effective Date of this Agreement.

9. **System Protection and Voltage Fluctuations**. Customer and Cooperative shall cooperate to see that Customer's load is operated in accordance with prudent utility practices, as defined in Paragraph 12 below.

  a. **Maximum Load**. Customer acknowledges that the energy-intensive nature of its operations are dissimilar to that of most other members of Cooperative and that any load in excess of its Contract Demand could result in damage to Cooperative's distribution system, EKPC's transmission system and/or the distribution substation. In the event that Customer's usage exceeds its Contract Demand, Customer shall be liable for any damages caused to EKPC or Cooperative in addition to all tariffed

9

Horizon000099

charges for demand exceeding Contract Demand. Furthermore, EKPC and Cooperative each reserve the right to de-energize Customer's Facility in the event that Customer's load presents a threat, in the sole discretion of EKPC or Cooperative, to their respective systems.

b.    **Voltage Fluctuations.** Customer agrees to operate its Facility and equipment to reduce voltage fluctuations or harmonic distortions. EKPC shall also install a load research meter to capture load and harmonics. Cooperative will notify Customer if its operations cause voltage fluctuations or harmonic distortions that result in interference with Cooperative's supply of service to other customers and will attempt to identify and help Customer correct such problems. Any substantial deviation from prudent utility practices that would cause additional voltage fluctuations or harmonic distortions requires approval from Cooperative. If Customer fails to install and/or to operate the necessary equipment on its premises to correct the voltage fluctuations or harmonic distortions of its load based on applicable industry and IEEE standards and recommended practices, or to prevent such voltage fluctuations or harmonic distortions from interfering with Cooperative's supply of services to other customers, EKPC or Cooperative shall have the right, in its sole discretion, to de-energize the Customer's load immediately to protect equipment and voltage quality for their respective systems.

10.    **Right of Access.** The duly authorized agents, representatives and employees of EKPC and/or Cooperative shall have access at all reasonable hours to the premises of Customer where equipment is owned by Cooperative or EKPC for the purpose of installing, repairing, inspecting, testing, operating, maintaining, renewing or exchanging any or all of their

Horizon000100

equipment which may be located on the premises of Customer for reading or testing meters, or for performing any other work incident to the performance of this Agreement. Customer shall not unreasonably withhold access from Cooperative and/or EKPC to access equipment or machinery owned by Cooperative or EKPC. The Parties agree to take reasonable steps to protect the property of each other Party located on its premises, and to permit no one to inspect or tamper with the wiring and apparatus of the other Party except such other Party's agents or employees, or persons authorized by law. It is agreed, however, that no Party assumes the duty of inspecting the wiring or apparatus of any other Party and shall not be responsible therefor and any risk taken by any other Party shall accept and insure the risk presented by its own employees, agents, or subcontractors onsite. The employees, agents, and representatives of EKPC and Cooperative that access the Customer's facilities shall abide by all applicable safety, health and similar rules and requirements provided by the Customer.

11.    **Right of Removal**. Any and all equipment, apparatus, devices, or facilities placed or installed, or caused to be placed or installed, by any of the Parties hereto on or in the premises of another Party shall be and remain the property of the Party owning and installing such equipment, apparatus, devices, or facilities regardless of the mode or manner of annexation or attachment of real property of the other. Upon the termination of this Agreement, or any extension thereof, the owner thereof shall have the right to enter upon the premises of the other upon notice and approval of the other Party and shall within a reasonable time remove all or any portion of such equipment, apparatus, devices, or facilities, unless otherwise agreed by the Parties at the time of such termination. As a part

11

of any such removal, the owner shall perform restoration as required for any damage caused by said removal.

12. **Prudent Utility Practice**. EKPC and Cooperative shall design, construct and operate its facilities in accordance with prudent electric utility practice in conformity with generally accepted standards for electric utilities in the Commonwealth of Kentucky, including, but not limited to, the applicable edition of the National Electric Safety Code, as adopted by the Commission. The Customer will adhere to, and comply with, all applicable building electric codes, statutes, rules and regulations and maintain their electrical facilities in a prudent and reasonable manner.

13. **Billing and Payment**.

    a.    **Regular Monthly Billing**. EKPC shall invoice the Cooperative for all energy, capacity or other service delivered to the Cooperative in accordance with EKPC's tariffs. The Cooperative shall then invoice the Customer for all energy, capacity or other service delivered to the Customer in accordance with Cooperative's tariffs. In both cases, the invoice shall provide sufficient information to demonstrate the manner in which the charges were calculated.

    b.    **Due Date**. Payment for electric power and energy furnished hereunder shall be due and payable at the office of Cooperative monthly. If Customer shall fail to pay any such bill, Cooperative may discontinue delivery of electric power and energy hereunder ten (10) days following written notice to Customer of its intention to do so. Such discontinuance for non-payment shall not in any way affect the obligations of Customer to pay the minimum monthly charge provided in the attached, or any other applicable, tariffs. All amounts unpaid when due shall be

12

Horizon000102

subject to a charge for late payment, as provided in EKPC's and Cooperative's approved tariffs, as applicable.

c.    **Failure to Take Delivery**. If Customer fails to accept all or part of the energy acquired or generated by EKPC or Cooperative when such purchases are made in performance of their respective obligations under this Agreement, and such failure is not excused by EKPC's or the Cooperative's failure to perform, then the Customer shall pay to the Cooperative, on the date payment would otherwise be due in respect of the month in which the failure occurred an amount for such deficiency equal to the positive difference, if any, obtained by subtracting the amount for which the energy is actually sold by EKPC or Cooperative to another buyer from the price set forth herein.  The invoice for such amount shall include a written statement explaining in reasonable detail the calculation of such amount and the efforts made by EKPC and/or Cooperative to market energy at the best market price attainable.

d.    **Customer Deposit**.  Customer shall, within ten (10) days of the Effective Date of this Agreement pay to Cooperative the sum equal to the amount of two times the estimated monthly average of Cooperative's Schedule 13(b) – Large Industrial Service – HLF billings.  In the event that this Agreement is not approved by the Commission, Cooperative shall refund any amounts paid as a deposit to Customer within ten (10) business days.

e.    **Due Diligence Report**. Customer shall, within thirty (30) days of receipt of an invoice from EKPC, pay to EKPC the actual amount paid by EKPC to have a due diligence report prepared on Customer by a third-party of EKPC's choosing.

13

14.   **Meter Testing and Billing Adjustment**. EKPC shall test and calibrate meters, or cause them to be tested and calibrated, by comparison with accurate standards at intervals of twenty-four (24) months. EKPC shall also make, or cause to be made, special meter tests at any time during normal business hours at Customer's request. The costs of all tests shall be borne or provided for by EKPC, provided, however, that if any special meter test made by Customer's request shall disclose that the meters are recording accurately Customer shall reimburse EKPC for the cost of such test. Meters registering not more than two (2) percent above or below normal shall be deemed to be accurate. The readings of any meter which shall have been disclosed by test to be inaccurate shall be corrected for the period during which meter error is known to have existed, or if not known, for one-half the elapsed time since the last such test in accordance with the percentage of inaccuracy found by such test. If any meter shall fail to register for any period, the parties shall agree as to the amount of MW Demand and energy furnished during such period. Such estimates shall be based on Customer's operating records for the period in question, historical load records and other pertinent data and records, and Cooperative shall render a bill to Customer therefore. Meter calibration records will be provided by EKPC upon request from the Customer.

15.   **Membership/Capital Credits**. Cooperative is a non-profit Kentucky corporation and Customer will benefit from any savings or reductions in cost of service in the same manner as any comparable customer as authorized by the Kentucky Revised Statutes, and by Cooperative's Articles of Incorporation and Bylaws. Customer shall participate in capital credits of Cooperative in accordance with the Kentucky Revised Statutes and Cooperative's Articles of Incorporation and Bylaws.

Horizon000104

16.  **Events of Default.** An "Event of Default" shall mean, with respect to a Party (a "Defaulting Party"), the occurrence of any of the following:

 a. the failure to make, when due, any payment required pursuant to this Agreement if such failure is not remedied within twenty (20) Business Days after written notice;

 b. any representation or warranty made by such Party herein is false or misleading in any material respect when made or when deemed made or repeated and written notice is given to that Party by another Party;

 c. the failure to perform any material covenant or obligation set forth in this Agreement (except to the extent constituting a separate Event of Default, and except for such Party's obligations to receive energy, the exclusive remedy for which is provided in Paragraph 13.c. above) if such failure is either not remedied within twenty (20) Business Days after written notice or reasonable steps have not been taken, and continue to be taken, to remedy such failure as soon as practical;

 d. a downgrade in the Customer's Credit Rating that is not remedied by the posting of adequate Performance Assurance, if required, within five (5) days of receiving the lower Credit Rating;

 e. such Party becomes bankrupt; or

 f. such Party consolidates or amalgamates with, or merges with or into, or transfers all or substantially all of its assets to, another entity and, at the time of such consolidation, amalgamation, merger or transfer, the resulting, surviving or transferee entity fails to assume all the obligations of such Party under this Agreement to which it or its predecessor was a party by operation of law or pursuant to an agreement reasonably satisfactory to the other Party. Notwithstanding this

Horizon000105

provision, the Parties agree that Customer shall not be in default if it is merged or consolidated with or acquired by an entity or entities in which control or majority interest remains in an affiliate, parent, or subsidiary of Customer.

17.    **Termination for an Event of Default.** If an Event of Default with respect to a Defaulting Party shall have occurred and be continuing and notice has been given in accordance with Paragraph 23 and any cure period(s) required in this Agreement have run, any other Party (the "Non-Defaulting Party") shall have the right to: (i) designate a day, no earlier than the day such notice is effective and no later than ten (10) days after such notice is effective, as an early termination date ("Early Termination Date") to accelerate all amounts owing between the Parties; (ii) withhold any payments due to the Defaulting Party under this Agreement; and (iii) suspend performance. The Non-Defaulting Party shall calculate, in a commercially reasonable manner and considering the full period of non-performance from the Early Termination Date through the date of the expiration of the Agreement's Initial Term, or any subsequent term, a Termination Payment amount as of the Early Termination Date. As soon as practicable after a termination, notice shall be given by the Non-Defaulting Party to the Defaulting Party of the amount of the Termination Payment and whether the Termination Payment is due to or due from the Non-Defaulting Party. The notice shall include a written statement explaining in reasonable detail the calculation of such amount. The Termination Payment shall be made by the Party that owes it within twenty (20) Business Days after such notice is effective. If the Defaulting Party disputes the Non-Defaulting Party's calculation of the Termination Payment, in whole or in part, the Defaulting Party shall, within twenty (20) Business Days of receipt of the Non-Defaulting Party's calculation of the Termination Payment, provide to the Non-Defaulting

Horizon000106

Party a detailed written explanation of the basis for such dispute; provided, however, that if the Termination Payment is due from the Defaulting Party, the Defaulting Party shall first transfer to the Non-Defaulting Party an amount equal to the Termination Payment to be held in escrow pending the outcome of the dispute.

18.    **Disputes and Adjustments of Bills.**  A Party may, in good faith, dispute the correctness of any invoice or any adjustment to an invoice, rendered under this Agreement or adjust any invoice for any arithmetic or computational error within twelve (12) months of the date the invoice, or adjustment to an invoice, was rendered.  In the event an invoice or portion thereof, or any other claim or adjustment arising hereunder, is disputed, payment of the invoice shall be required to be made when due, with notice of the objection given to the other Parties.  Any invoice dispute or invoice adjustment shall be in writing and shall state the basis for the dispute or adjustment.  Upon resolution of the dispute, any required refund shall be made within twenty (20) Business Days of such resolution along with interest accrued at the rate of three percent (3%) over the stated rate for commercial paper as published in the *Wall Street Journal* on the date that notice of the Dispute is given, from and including the due date to but excluding the date of the refund.  Inadvertent overpayments shall be returned upon request or deducted by the Party receiving such overpayment from subsequent payments. Any dispute with respect to an invoice is waived unless the other Parties are notified in accordance with this paragraph within twelve (12) months after the invoice is rendered or any specific adjustment to the invoice is made.  If an invoice is not rendered within twelve (12) months after the close of the month during which performance occurred, the right to payment for such performance is waived.

17

Horizon000107

19.  **Resolution of Disputes.**  Any dispute or need of interpretation between the Parties involving or arising under this Agreement first shall be referred for resolution to a senior representative of each Party.  Upon receipt of a notice describing the dispute and designating the notifying Party's senior representative and that the dispute is to be resolved by the Parties' senior representatives under this Agreement, the other Parties shall promptly designate its senior representatives to the notifying Party.  The senior representatives so designated shall attempt to resolve the dispute on an informal basis as promptly as practicable.  If the dispute has not been resolved within thirty (30) days after the notifying Party's notice was received by the other Parties, or within such other period as the Parties may jointly agree, the Parties may pursue any remedies available at law or in equity to enforce its rights provided in the Agreement.  During this resolution process, EKPC and Cooperative shall continue to supply renewable energy as requested by Customer and Customer shall continue to accept requested renewable energy. Notwithstanding any inconsistent provision herein, any Party may be entitled to injunctive or other equitable relief without resort to the settlement or resolution procedures set forth herein.

20.  **Representations and Warranties.** Each Party represents and warrants to the other Parties that:

   a.    it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation and that it is authorized to do business within the Commonwealth of Kentucky;

   b.    it has all legal and regulatory authorizations necessary for it to legally perform its obligations under this Agreement or is diligently pursuing them;

18

c.    the execution, delivery and performance of this Agreement are within its powers, have been duly authorized by all necessary action and do not violate any of the terms and conditions in its governing documents, any contracts to which it is a party or any law, rule, regulation, order or the like applicable to it, except as set forth herein;

d.    this Agreement constitutes its legally valid and binding obligation enforceable against it in accordance with its terms;

e.    it is not bankrupt and there are no proceedings pending or being contemplated by it or, to its knowledge, threatened against it which would result in it being or becoming bankrupt;

f.    there is not pending or, to its knowledge, threatened against it or any of its affiliates any legal proceedings that could materially adversely affect its ability to perform its obligations under this Agreement;

g.    no Event of Default or potential Event of Default with respect to it has occurred and is continuing and no such event or circumstance would occur as a result of its entering into or performing its obligations under this Agreement;

h.    it is acting for its own account, has made its own independent decision to enter into this Agreement and, as to whether this Agreement is appropriate or proper for it based upon its own judgment, is not relying upon the advice or recommendations of any other Party in so doing, and is capable of assessing the merits of and understanding, and understands and accepts, the terms, conditions and risks of this Agreement;

19

Horizon000109

i.      it has entered into this Agreement in connection with the conduct of its business and it has the capacity or ability to make or take delivery of all energy referred to herein;

j.      if applicable, it is compliant with all federal laws regarding the regulation and protection of securities, technology, infrastructure and financial data, including, without limitation, the Securities Act of 1933, Securities Exchange Act of 1934, Trust Indenture Act of 1939, Investment Company Act of 1940, Investment Advisors Act of 1940, Sarbanes-Oxley Act of 2002, Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Jumpstart Our Business Startups Act of 2012, the Foreign Investment Risk Review Modernization Act of 2018 and all rules and regulations promulgated thereunder, whether by the Securities and Exchange Commission, United States Treasury, Committee on Foreign Investment in the United States, Internal Revenue Service or other jurisdiction over Customer's business and operations; and

k.      the material economic terms of this Agreement were and are subject to individual negotiation by the Parties.

21.   **Disclaimer and Force Majeure.** Customer understands and acknowledges that the generation, transmission and distribution of energy is dependent upon numerous factors, including many which are beyond the control of EKPC and the Cooperative. EKPC and the Cooperative shall not be responsible or liable for any disruption or prevention of the production, transmission or distribution of energy that is directly attributable to: (a) natural events such as acts of God, landslides, lightning, eclipses, weather patterns, earthquakes, fires, storms or the like; (b) interruption and/or curtailment of transmission facilities of

Horizon000110

third-parties; (c) acts of others such as strikes, lockouts or other industrial disturbances, riots, sabotage, insurrections or wars, or acts of terror; and (d) governmental actions such as necessity for compliance with any court or administrative order, law, statute, ordinance, regulation, order, or policy having the effect of law promulgated by a governmental authority having jurisdiction.

22.    <u>Limitation of Liability</u>. **EXCEPT AS MAY BE SET FORTH EXPRESSLY HEREIN, CUSTOMER UNDERSTANDS AND ACKNOWLEDGES THAT EKPC AND THE COOPERATIVE HAVE MADE NO SPECIFIC OR GENERAL REPRESENTATIONS OR WARRANTIES REGARDING THE ENERGY TO BE PURCHASED HEREBY OR ANY FACILITIES ASSOCIATED WITH GENERATING, TRANSMITTING OR DISTRIBUTING SAME, INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. TO THE EXTENT ANY REPRESENTATIONS AND WARRANTIES HAVE BEEN MADE, UNLESS EXPRESSLY SET FORTH HEREIN, CUSTOMER UNDERSTANDS AND ACKNOWLEDGES THAT THEY ARE HEREBY EXPRESSLY DISCLAIMED. CUSTOMER ALSO UNDERSTANDS AND AGREES THAT HIS OR HER SOLE AND EXCLUSIVE REMEDY IN THE EVENT OF A BREACH OF THIS AGREEMENT BY EKPC OR THE COOPERATIVE IS EXPRESSLY LIMITED TO PURCHASING REPLACEMENT POWER FROM THE COOPERATIVE AT PREVAILING TARIFFED RATES.**

23.    <u>Notices</u>. All notices, requests, consents, and other communications required under this Agreement shall be in writing and will be mailed to the mailing address for each Party as

Horizon000111

set forth below. Notices will be deemed delivered upon the earlier of: (a) the date of actual receipt, with a copy thereof being sent concurrently by certified or registered mail, return receipt requested: (b) three (3) Business Days after being deposited in certified or registered mail, return receipt requested, postage prepaid; or (c) the following Business Day after being delivered to a reputable overnight courier service.

a.    Any written notice, demand or request required or authorized under this Agreement

shall be deemed properly given to or served on Cooperative if mailed to:

> Mr. Bradley Cherry
> President and Chief Executive Officer
> Grayson Rural Electric Cooperative Corporation
> 109 Bagby Park
> Grayson, KY 41143

b.    Any such notice, demand or request shall be deemed properly given or served on

Customer if mailed to:

> Philip Zho
> Project Lead
> Horizon Mining, LLC
> 4818 4th Street
> Baldwin Park, CA 91706

c.    Any such notice, demand or request shall be deemed properly given or served on

EKPC if mailed to:

> David Smart, General Counsel
> East Kentucky Power Cooperative, Inc.
> 4775 Lexington Road
> Winchester, KY 40391

Each party shall have the right to change the name of the person to whom, or the location where the notices are to be given or served by notifying the other Parties, in writing, of such change.

22

Horizon000112

24. **Title and Risk of Loss.** Title to and risk of loss related to the renewable energy acquired herein shall transfer: (a) from EKPC to the Cooperative at the delivery point(s) for all energy delivered to the Cooperative currently and in the future; and (b) from the Cooperative to the Customer at the Customer's meter. EKPC and Cooperative both warrant that they will deliver the renewable energy to the Customer free and clear of all liens, security interests, claims and encumbrances or any interest therein or thereto by any person arising prior to the Customer's meter. Neither Cooperative nor EKPC shall be liable for loss or damage to any person or property whatsoever, and Customer agrees to indemnify and hold EKPC and/or Cooperative harmless for damages suffered by any individual or business entity resulting directly or indirectly from the use, misuse or presence of the said electric power and energy on Customer's premises, or elsewhere, after it passes the Point of Delivery, except where such loss or damage shall be shown to have been occasioned by the gross negligence of EKPC or Cooperative, their agents or employees.

25. **Continuity of Service.** Cooperative shall use reasonable diligence required of a public utility in Kentucky to provide a constant and uninterrupted supply of electric power and energy hereunder. If the supply of electric power and energy shall fail, or become defective through acts of God, Governmental authority, action of the elements, public enemy, accident, strikes, labor trouble, or any other cause beyond the reasonable control of Cooperative, it shall not be liable therefor or for damages caused thereby. From time to time, electric supply interruption may be required to perform maintenance on equipment or machinery that cannot be maintained while energized. Cooperative and/or EKPC will endeavor to coordinate with Customer to minimize the impact for such an event.

Horizon000113

26. **Successors in Interest – Assignment.** The terms and conditions of this Agreement shall inure to and be binding upon the Parties, together with their respective successors in interest. The Customer may not transfer or assign any obligation, right, liability, or credit arising under this Agreement from one account or service address to another account or service address. The Customer may not transfer, assign, convey, sell or donate this Agreement to any other person unless EKPC and the Cooperative have both provided their express written consent to such action. The foregoing restriction notwithstanding, the Parties agree that the Customer may make such transfer or assignment to any affiliate, parent, subsidiary, or other entity or entities under common control. Such consent may be granted or withheld in the sole discretion of EKPC and the Cooperative. EKPC and Cooperative may assign this Agreement to the Rural Utilities Services ("RUS") and/or any other lenders to EKPC or Cooperative without Customer's consent.

27. **Force Majeure.** The obligations of either party to this Agreement shall be suspended during the continuance of any occurrence, beyond the affected party's control (a "force majeure"), which wholly or partially prevents the affected party from fulfilling such obligations, provided that the affected party gives notice to the other party of the reasons for its inability to perform within a reasonable time from such occurrence, is diligently seeking to cure said force majeure, and gives notice to the other party within a reasonable time of such cure. As used in this Paragraph, the term force majeure shall include, but is not limited to: acts of God; strikes, wars, acts of public enemy; riots; storms; floods; civil disturbances; explosions; failures of machinery or equipment; unavoidable disruptions in power deliveries from EKPC; or actions of federal, state or local governmental authorities, which are not reasonably within the control of the party claiming relief. Notwithstanding

24

Horizon000114

the above provision, no event of force majeure shall relieve Customer of the obligation to pay the minimum monthly charges provided herein or in the attached tariffs

28.    **Approvals.**  The rates and charges for electrical service established hereunder are subject to approval by the Commission pursuant to Kentucky Revised Statutes, Chapter 278, and any necessary approvals by the RUS and the National Rural Utilities Cooperative Finance Corporation.  The parties covenant to use their best efforts to forthwith seek and support such approvals for this Agreement by filing such papers, presenting such testimony and taking such other action as may be necessary or appropriate to secure the same.  If such approval shall not be received from the Commission on or before February 28, 2022, any Party may void this Agreement without further liability, except to the extent any liability has already accrued.

29.    **Effect on other Rates.**  Nothing in this Agreement shall be construed to effect, limit, alter, amend or change the terms or conditions of Customer's receipt of service from the Cooperative under any other tariff or rate schedule then in effect or subsequently approved by the Commission which applies to the Customer.  Likewise, nothing in this Agreement shall be construed to effect, limit, alter, amend or change the terms or conditions of the Cooperative's receipt of service from EKPC under any other tariff or rate schedule then in effect or subsequently approved by the Commission which applies to the Cooperative.

30.    **Modifications.**  Any future revisions or modifications of this Agreement shall require the unanimous written approval of EKPC, Cooperative and Customer, and any necessary approvals by RUS, any other lenders to Cooperative or EKPC, and Commission.

31.    **Indemnification.**  Customer agrees to indemnify and hold Cooperative and EKPC, and their respective directors, officers, employees, attorneys, agents, representatives,

Horizon000115

successors and assigns harmless and to defend them at its sole cost and expense from each, every, any and all liabilities, judgments, claims, causes, actions, costs, expenses, compensation, demands or damages of any kind whatsoever asserted in any judicial or administrative form, whether arising in law, equity or other authority, including, without limitation, claims of third parties for indemnification and/or contribution, which may accrue to such others and their executors, administrators, heirs, successors and assigns, through any act, omission, event or occurrence caused by the actions or operations of the Customer, the violations of any authority identified herein or the performance of this Agreement.

32. **Miscellaneous**.

    a.    **Headlines of Articles**. Headings of articles of this Agreement have been inserted for convenience only and shall in no way affect the interpretation of any term or provision hereof.

    b.    **Severability**. Except where expressly stated otherwise, the duties, obligations and liabilities of the Parties are intended to be several and not joint or collective.

    c.    **Waiver of Trial by Jury**. **EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THE AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE EACH SUCH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THE AGREEMENT. EACH PARTY CERTIFIES AND**

Horizon000116

ACKNOWLEDGES THAT: (A) NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER; (B) SUCH PARTY UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER; (C) SUCH PARTY MAKES THIS WAIVER VOLUNTARILY; AND (D) SUCH PARTY HAS BEEN INDUCED TO ENTER INTO THE AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS PARAGRAPH.

d.   **Jurisdiction.**  Each party agrees that any suit, action, dispute or other proceeding arising out of the Agreement or any transaction contemplated by the Agreement shall be heard in, and hereby irrevocably submits to the exclusive jurisdictions of the Circuit Court of Clark County or Carter County, Kentucky, and the United States District Court for the Eastern District of Kentucky, Lexington Division, and the related appellate courts.  Each party further agrees that service of any process, summons, notice or document by U.S. registered mail to such Party's respective address set forth in the Agreement shall be effective service of process for any actions, suit, dispute or other proceeding described herein.  Each Party irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the aforementioned courts and the related appellate courts, and hereby and thereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any

27

Horizon000117

such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

e.    **Governing Law.** This Agreement shall be deemed to have been made in, and shall be construed under, the internal laws of the Commonwealth of Kentucky, without regard to the principles of conflicts of laws thereof.

f.    **Waivers.** **ANY WAIVER AT ANY TIME BY A PARTY OF ITS RIGHTS WITH RESPECT TO A DEFAULT OR WITH RESPECT TO ANY OTHER MATTERS ARISING ON CONNECTION WITH THIS AGREEMENT SHALL NOT BE DEEMED A WAIVER WITH RESPECT TO ANY SUBSEQUENT DEFAULT OR OTHER MATTER.**

g.    **Prior Agreements.** This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all previous proposals, both oral and written, negotiations, representations, commitments, writings and all other communications between the parties. This Agreement may not be released, discharged, or modified except by an instrument in writing signed by a duly authorized representative of each of the parties.

h.    **No Agency.** In performing their respective obligations hereunder, no Party is acting, or is authorized to act, as agent of any other Party.

i.    **Forward Contract.** The Parties acknowledge and agree that all sales of renewable power hereunder constitute "forward contracts" within the meaning of the United States Bankruptcy Code.

j.    **Counterparts.** This Agreement may be executed in any number of counterparts, each of which, when executed and delivered, shall be deemed an original.

28

Horizon000118

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed by their duly authorized representatives, as of the day and year first above written.

**EAST KENTUCKY POWER COMPANY, INC.**
BY: _____    TITLE: Pres./CEO _____

DATE: 10/21/2021 _____


**GRAYSON RURAL ELECTRIC COOPERATIVE CORPORATION**
BY: _Bradley Cheny_    TITLE: _President + CEO_

DATE: _10/15/2021_


**HORIZON MINING, LLC**
BY: _____    TITLE: _CEO_

DATE: _10/15/2021_

29