# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
### NORTHERN DIVISION AT ASHLAND

HENSYN RESOURCES, LLC,

        *Plaintiff*

V.

HORIZON MINING, LLC,

        *Defendant*

V.

CODY STURGILL,

Case no. 0:22-cv-00085-DLB-EBA

*Electronically Filed*

\* \* \* \* \* \* \* \* \* \*

### PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO SUMMARY JUDGMENT

*COMES* NOW THE PLAINTIFF, HENSYN RESOURCES, LLC (HENSYN), by and through counsel, and for states as follows its reply to Defendant's (Horizon) Opposition to Summary Judgment.

### INTRODUCTION

Horizon's response to the motion for summary judgment skirts the main issues, undisputable facts, and basic contract law. The foundation of Horizon's argument rests on its claim for a flat, fixed, or "all-in cost of electricity"[1]. However it is phrased, this foundation, as a matter of law, was unfair, inappropriate, and unacceptable in the Commonwealth of Kentucky. As proved by EKPC's Scott Drake, the Public Service Commission would never approve such a rate because it must fluctuate to accommodate changes in the economy. Other than not being a flat, fixed, or "all in price," Horizon does not contest the reasonableness of the price that it agreed upon by

---

[1] R. 34 at 6

signing the IPA. Therefore, Horizon has failed to show any legal rationale for breaching the contract, and summary judgment is appropriate.

## ARGUMENT

Horizon's entire claim is founded on its assertion that it signed a contract (the IPA) that was not fair, appropriate, or acceptable to it. It has never shown any legal justification or rationale that would allow it to state that the terms of the contract that it signed were not fair, appropriate, or acceptable. It begs the question: If the IPA terms were unfair, inappropriate, and unacceptable to Horizon, why did Horizon sign the agreement? Why did Horizon not go to Hensyn and demand a better deal—before agreeing to the IPA terms?

### A. **Horizon's claim is that the rate it accepted was not acceptable, but its rate demand was impossible and illegal under Kentucky law.**

Regardless, Horizon's rate demand was unfair, inappropriate, and unacceptable with the Kentucky PSC. Such rates, evinced by the Affidavit of Scott Drake, were not permitted by the Kentucky Public Service Commission.[2] Pursuant to KRS § 278.040 and 278.990, The PSC has the authority to regulate electric utility rates and punish providers who do not conform to said regulations. By providing Horizon with its desired flat rate, EKPC would violate the standards set by the PSC, which expressly forbid flat rates.[3] This provision, if it were even found to be a part of the IPA between EKPC and Horizon, would not be enforceable due to its illegality. *Miller v. Miller*, 296 S.W.2d 684, 688 (Ky. 1956). Horizon, in advocating for this flat rate, seeks enforcement premised upon an illegal request that was not even enumerated in the services agreement.

Horizon purports in its Opposition that it never sought a flat rate.[4] A flat rate may also be referred to as a fixed rate, which remains stable, immobile, and concentrated.[5] It means that the rate will not go above a certain amount. In Horizon's Motion for Summary Judgment, it frames

---

[2] Affidavit of Scott Drake, ¶ 6.
[3] *Id.*
[4] R 50. at 4.
[5] https://www.merriam-webster.com/dictionary/fixed#:~:text=1,%3A%20nonvolatile

2

the demand as "the all-in cost of electricity."[6] Regardless of how one phrases the demand, an "all-in cost of electricity" rate was unfair, inappropriate, and unacceptable under Kentucky law.

A contracting party cannot sue for recovery on the premise of illegal provisions enumerated in a contract, as such provisions are inherently unenforceable. *Miller v. Miller*, 296 S.W.2d 684, 688 (Ky. 1956). Furthermore, Horizon cannot compel remedies that the law forbids. *S.J.L.S. v. T.L.S.*, 265 S.W.3d 804, 821 (Ky. App. 2008). Illegal provisions do not eradicate the enforceability of the entire contract, however: where an agreement has an illegal provision, the legal provisions may be enforced, predicated on the ability to separate the "bad" provisions from the "good." *Louisville and Jefferson Cty. Metro. Swr. Dist. V. T+C Contracting, Inc.*, 570 S.W.3d 551, 559 (Ky. 2018).

Under Kentucky law, the Kentucky Public Services Commission is delegated the exclusive jurisdiction over the regulation of rates and services included with utilities, including power and electricity. KRS § 278.040(2). This regulatory power includes the power to penalize any "officer, agent, or employee of a utility" for noncompliance with any procedures, rates, or rate structures put into place by the PSC. KRS § 278.990. In other words, a utility service provider such as EKPC is subject to the regulatory authority of the PSC at the risk of monetary, administrative, or legal penalty.

Assuming the 4 cent per kWh price was even included in the services agreement, such a flat, fixed, or "all-in" rate would never be approved by the PSC.[7] Horizon was made aware of this impossibility through meetings with Scott Drake, EKPC representatives, and its own experiences in receiving higher-than-anticipated usage bills.[8] Horizon now seeks recovery predicated on the alleged failure of Hensyn to provide this illegal flat, fixed, or "all-in" rate of 4 cents per kwh.[9] Of course, Kentucky case law has made it abundantly clear that this claim for relief is invalid, as the "fair, appropriate, and acceptable" price is also an illegal price subject to the authority of the PSC.

---

[6] R. 34 at 6.
[7] Affidavit of Scott Drake ¶ 6.
[8] Affidavit of Scott Drake ¶ 3; R. 42- 5; R. 42- 6; R. 42- 14.
[9] R. 50. at 2.

3

Hensyn never even alluded to the possibility of being able to carry out such illegal promises. As stated at several intervals throughout several pleadings, the record does *not* indicate any time in which Hensyn expressly or impliedly agreed to provide Horizon with a four-cent flat, fixed, or "all-in" rate. Mr. Sturgill simply informed Horizon that he would do what he could to provide the lowest rates possible.[10]

### B. **Horizon evades the Drake Affidavit.**

In light of the information provided by Scott Drake's Affidavit, the record clearly demonstrates the illegality and unenforceable nature of Horizon's relief sought upon its interpretation of § 1.1(b) of the Services Agreement. In a written version of an ostrich defense, Horizon sticks the Drake Affidavit in the sand of the footnotes.[11] These sandy footnotes do not discuss the impact of Mr. Drake's testimony to the impossibility and illegality of Horizon's position.[12] It makes no assertion or counter argument as to how its "all-in" rate would ever be considered fair, appropriate, or acceptable under Kentucky law and the PSC.

Drake's affidavit clearly sets out that flat rates (synonymous with "all-in rate") would never be approved by the PSC. There are several bitcoin mines in Kentucky. All rates are based upon the same price structure, and none are fixed, flat, or limited by an "all-in rate". It was incumbent upon the responding party to a motion for summary judgment to come forward with some evidence to contradict this assertion. Surely, if it believed that its rate demands today were fair, appropriate and acceptable, it would have provided proof that such a rate would pass the PSC's review. It did not because it cannot. The foundation of Horizon's breach by Hensyn is premised upon an unreasonable and illegal demand.

---

[10] R. 42- 1; R. 42- 2.
[11] R. 50. note 17.
[12] *Id.*

## C. **Horizon agreed to the IPA utility rate and cannot now say it was not fair, appropriate, and acceptable.**

Under Kentucky law, one who signs a contract is presumed to know its contents, and if he has an opportunity to read that contract which he signs, he is limited to its provisions. *Hatfield v. M&M Imports, Inc.*, 575 F.Supp.3d 775 (2021). Additionally, a contract signee who signs in the absence of fraud or deceit cannot avoid enforcement of the contract on the grounds that he did not read it *or* took someone else's word as to what the contract contained. *Jackson v. Brook Ledge, Inc.*, 991 F.Supp. 640 (1997).

Here, Horizon alleges that Hensyn breached various provisions of the Services Agreement by failing to negotiate an "all-in rate of electricity" that was fair, appropriate, and acceptable to Horizon. Horizon has not disputed the evidence that it participated in the negotiation of the rate it agreed upon. Indeed, Horizon negotiated (with Hensyn's assistance), signed, and thereby ratified under its own authority, the utility rate set forth in the IPA.[13]

Since Horizon negotiated and signed the IPA, it agreed to the rate as being fair, appropriate, and acceptable. If Hensyn had solely negotiated and signed the IPA as Horizon's agent, then Horizon could argue that Hensyn acted outside the scope of its authority. However, Horizon was involved in the negotiations and signed the agreement itself. Even if Hensyn had negotiated the terms, Horizon ratified the agreement by its signature to the IPA.

There is no theory of contract law that Horizon can argue that what it agreed to was not agreeable to it in order to avoid performance under the Service Agreement with Hensyn.

## D. <u>No Evidence Showing the Negligent Misrepresentation of Cody Sturgill</u>

Finally, Horizon offers no evidence to support its assertions of negligent misrepresentation of Cody Sturgill. It is undisputed that Mr. Sturgill held himself out to be an experienced professional in his field, and that he cooperated with Horizon in carrying out its goal of starting up low-cost cryptocurrency mines in Kentucky. As such, Horizon's claims of "at least a factual

---

[13] R. 42- 13; R. 42- 17.

dispute" pertaining to negligent misrepresentation are flawed.[14] The flaw in this argument rests in a lack of evidence that Mr. Sturgill "guaranteed" Horizon *anything* outside of a dutiful performance of his assigned role as representative.[15]

Horizon cites Mr. Sturgill's statements that he could "100% secure" 300-500 mw of power at ".045 cents maybe a little less."[16] This statement was made before various clarifications were made, with Horizon ultimately rejecting the *correct* stated price of 4.5 cents per kwh.[17] As per standard negotiation, this "guarantee" was revoked by Horizon's drive for a 4 cent or less flat rate. The new "promise" made by Mr. Sturgill—strikingly not mentioned at all in Horizon's section regarding negligent misrepresentation—was to try his best to keep the pricing as low as possible.[18]

## CONCLUSION

Whether Horizon calls it an "all-in" utility rate, or a flat or fixed rate, Horizon's desire was never going to be approved in Kentucky. Utility rates are highly regulated and no customer gets a guarantee that the rates will not fluctuate with the economy. Therefore, the foundation of Horizon's claims crumble under the weight of contract law and common sense. Horizon owes Hensyn compensation under the agreement based upon the utility usage at the Little Sandy site as a matter of law. .

Respectfully submitted,
WILHOIT LAW OFFICE, PLLC

*/s/ William H. Wilhoit*
WILLIAM H. WILHOIT
P.O. Box 35
Grayson, Kentucky 41143
(606) 474-8833
*Attorney for Plaintiffs*

---

[14] R. 50. at 15.
[15] *Id.*
[16] *Id.*
[17] R. 42- 1.
[18] *Id.*

6

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing was filed with the Court's ECF system and served on the following counsel of record by email on this 14th day of October, 2024.

| | |
|---|---|
| Hon. Daniel E. Danford | Hon. John L. Tate |
| Stites & Harbison PLLC | Frederick R. Bentley |
| 250 W Main St., Ste 2300 | Stites & Harbison PLLC |
| Lexington, KY 40507 | 400 W Market St, Ste 1800 |
| | Louisville, KY 40202 |

WILHOIT LAW OFFICE, PLLC

***/s/ William H. Wilhoit***
WILLIAM H. WILHOIT